James Mansel et al., Taxpayers of the County of Lycoming, in behalf of and to the use of the said County of Lycoming, Appellants, *v.* Frank Fulmer.

*Sheriff—Fees—Charge for removal of prisoners.*

A sheriff's charge for removal of prisoners should be strictly confined to expenses reasonably necessary; but the Supreme Court will not reverse where the sheriff was allowed a sum which appears to be liberal, and where it does not affirmatively appear from the testimony that it includes any material item which would not come under the head of necessary and proper expenses incurred by the sheriff in the discharge of his duties.

*Sheriff—Fees—Summoning jurors—Acts of March* 12, 1866, *and April* 2, 1868.

The local act of March 12, 1866, P. L. 187, relating to sheriff's fees in Lycoming county is repealed by the general act of April 2, 1868, P. L. 14, inasmuch as the act by its terms is applicable "throughout this commonwealth," and Lycoming county is not one of the six counties expressly excepted from the operation of the act.

Argued March 19, 1896.    Appeal, No. 275, Jan. T., 1896, by plaintiffs, from judgment of C. P. Lycoming Co., June T., 1895, No. 564, on verdict for defendant.    Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ.    Affirmed as modified.

Appeal from account of county auditors.    Before MAYER, P. J., of the 25th judicial district, specially presiding.

The facts appear by the charge of the court which was as follows :

Frank Fulmer was the sheriff of the county of Lycoming for the year 1894.    In pursuance of the provisions of an act of assembly, he was required to present his account to the county auditors of this county for audit and adjustment.    The account was presented, and the auditors, at the end of the fiscal year, 1894, which would be the beginning of January, 1895, undertook to audit, adjust and settle this account, which they did ; and they found a balance due the sheriff, under the settlement as they made it, of $1,474.67.    Under the provisions of the act of assembly passed in 1878, ten taxpayers appealed from the settlement made by the county auditors, and appeared in court and asked for an issue to be framed for the purpose of determining whether or not this settlement by the county auditors was a correct and just settlement of the sheriff's account.    [An issue was awarded by the court, in which these taxpayers are the plaintiffs and Frank Fulmer, the sheriff, is the defendant, and it is the issue which this jury is now sworn to try, and determine under the evidence what would be a fair, equitable and just settlement of the account of the sheriff of Lycoming county for the year 1894.] [1]

[Certain items of this account have been assailed here by these appellants, to which we will call your attention.    In the first place we say to you that the settlement made by the county

auditors, of the account of the sheriff, is prima facie presumed to be correct and just. They are sworn officers, sworn to discharge their duties with impartiality and fidelity, and the settlement made by them of the account of the sheriff is prima facie presumed to be correct; and where the fairness and integrity of this account is attacked by these appellants, it is incumbent upon them to show in what respect the account is not correct and not sanctioned by law.] [2]

[The first item which is objected to by these appellants is the item of "day's boarding of prisoners at 35 cents a day." It appears that in 1858, (which, I think, is the date of the act of assembly) the legislature passed an act giving the sheriff 35 cents a day for boarding prisoners, but that did not require him to do anything else than board the prisoners at the stipulated sum of 35 cents per day. The charge in his account, as presented to the county auditors, is for twelve thousand two hundred and forty days at 35 cents a day, which amounts to $4,284. It is alleged on the part of these appellants that there was a mistake made in these accounts; that the sheriff charged more days than he should have charged, and this is one of the items the jury will have to pass upon under the testimony. It is conceded on the part of the sheriff himself, that there was a mistake made in his account of some forty-three days; although the appellants claim, according to their statement, that there is a larger number of days for which he should not be entitled to credit. You will have the statements on the one side and the other sent out with you, and you will have to determine from all the testimony in the case which statement is correct. If you find, as claimed by the sheriff, that there was merely an overcharge of forty-three days, then you should deduct from this one item of "day's boarding of prisoners," the number of days at 35 cents per day.] [3] [In order to get at the time when these prisoners were incarcerated and the number of days charged, we say to you that we think the prison record is the most satisfactory evidence of the number of days these prisoners were incarcerated in the prison. It is much more reliable testimony than the loose recollection of the prisoners who were in prison. The sheriff is required to keep this calender. He is required to put on his book or prison record the name of the prisoner, when committed, the length of time he was committed.

and when he was discharged; and we think that would be more satisfactory evidence to guide this jury in determining the number of days that these prisoners were incarcerated, and how long they were boarded by the sheriff than the loose, uncertain recollection of these witnesses who have been called here on the part of the appellants. We think it would be a safe guide for this jury to take the prison record for the purpose of ascertaining the number of days.] [4] However, you can consider the testimony of these witnesses along with the other testimony in the case, and if the jury are satisfied that their testimony is reliable, taking into consideration the fact that they depend entirely upon their own recollection, and also the character of the witnesses, it will be for the jury to determine whether this evidence is credible for the purpose of overturning the record which the officer of the county is required to keep, under the law. As to that item, gentlemen, you ascertain how many days should be deducted from the day's boarding, and take that amount off.

[Then the next item in this account which is assailed is one thousand seven hundred and twelve weeks' washing for prisoners at 25 cents per week. This item seems to be resisted more strenuously than any other item contained in the sheriff's account. They seem to resist this item of charge as being unwarranted and being an overcharge. Now, there is nothing in the provision of the constitution, and there is nothing in public policy, which prevents the county commissioners from making an arrangement with the sheriff to take care of the prison and keep it clean, and do the washing of the prisoners.] [5] He is not required to do it by his official duty, and there is nothing in the fee bill allowing compensation for it, and the county commissioners are bound in the discharge of their official duties to keep the jail clean and to wash for the prisoners, and if they neglect that duty they are amenable to the law for a misdemeanor in office. They have no right to allow the jail to be kept in an uncleanly, disorderly condition. It is a part of their duty to keep the jail clean; it is a part of their duty to see that the prisoners keep it clean, and that the bed clothing and all the other appurtenances about the jail are kept in neat order and condition. In fact, the board of public charities was instituted by an act of assembly for the express purpose of visiting

prisons and the various public institutions of the counties in this state, in order to see that the duties of the county commissioners are promptly and faithfully carried out; and if they are not carried out report would be made to the board of public charities and then the attention of the county commissioners would be called further to it.    The sheriff is required by the act of assembly to make quarterly reports of the condition of the jail in January, April, July and October, and these various acts of assembly were passed for the express purpose of keeping the jails of this commonwealth in a sanitary condition; and it is the duty of the commissioners to discharge that duty, and they had a right to make any arrangement they saw proper with the sheriff for that purpose.    Whether this contract of 25 cents for the washing of prisoners was made with the sheriff is a question the jury must determine under the evidence; and although the jury should find that they made this contract, the price per week would not be binding on the county if the jury, after a proper investigation, should come to the conclusion that it was not a reasonable price.    A contract of this character made by the county is always subject to public inquiry and public investigation; and if the jury are satisfied that this contract was made, and that it was unreasonable in price, they have a right to allow on the contract whatever in their judgment would be a fair and reasonable compensation.    There is nothing in the fee bill regulating the price.    [The sheriff alleges, and one of the county commissioners states, that at the conference held in the commissioners' office, when the whole board of commissioners was present, Sheriff Fulmer appeared there and wanted to know what arrangement would be made in relation to the jail for the year 1894, and he says that the commissioners informed him that the same arrangement would be carried out in the year 1894 that was in force in prior years, when his predecessors in office were in possession of the jail.    Mr. Robinson, one of the commissioners, states that the board knew what price was to be paid for these prisoners, for the washing of them, and the sheriff so understood it, and that was the mutual understanding between these parties, and if their minds met on that subject it would be sufficient to constitute a contract between these parties; but whether the contract is a fair and reasonable one this jury will determine from the evidence.]    [6]    If you come to the conclu-

sion then that this contract was made, and it was fair and reasonable compensation, then the next question for the jury is to determine from the evidence whether this work was done—whether the sheriff did the work for which he charges the one thousand seven hundred and twelve weeks, and whether he carried out this contract and is entitled to be compensated for it. If the jury should come to the conclusion that this contract was not fully carried out by the sheriff, still the sheriff would be entitled to be compensated and paid for the soap and hot water that was drawn and used for the prisoners. He was not bound in the discharge of his official duties to furnish the hot water and soap for these prisoners. It was part of the commissioners' duty, and he is entitled to be compensated for it. [However, if you come to the conclusion under the testimony that the sheriff did washing for the number of days he charges, he is entitled to be paid the contract price, and that item should be allowed.] [7]

[Then the next item is the amount of services in reporting jail movement. We find from the testimony in this case that, under the act of assembly, the sheriff is required to make a quarterly report to the board of public charities on the 1st of January, April, July and October, and he is entitled to be paid $10.00 for each one of these reports. In making up your accounts that item should be corrected; because the sheriff is just as much entitled to have his account corrected where it is wrong as the other side has a right to claim it should be corrected where they allege it is in error. As that seems to be an error, we think it is just and proper that the sheriff should be credited for $40.00 instead of the $20.00 which he has charged in that item.] [8]

Then the twenty-nine days attending court at $4.00 per day. That item will have to be stricken out from this account, as there is no warrant of law for any such charge. There is nothing in the fee bill authorizing the sheriff to receive that compensation, and that will have to be stricken out from this account.

[Next is the removing of prisoners to the penitentiary, asylum, house of refuge, reformatory, etc., $555.57. The appellants claim that charge is too much, and they have undertaken to make a statement as to what amount the sheriff should be allowed. Now, the act of assembly, or the fee bill of 1868, gives

the sheriff $4.00 a day for each day consumed in taking the prisoners either to the asylum, reformatory, house of refuge, or the penitentiary, and that is in addition to all expenses. The sheriff is entitled to be fairly compensated for taking these prisoners, and whatever the jury, under the testimony, think would be fair, reasonable compensation, in addition to the $4.00 a day, he is entitled to. The compensation is not very large, for he gets only $4.00 a day to be absent from his office, and that is all that he gets in addition to his expenses, and I say that he is entitled to a fair, reasonable compensation.] [9] If the jury, under the testimony, think that the items charged in this account of $555.57 is a fair and reasonable compensation for the expenses, which includes also the $4.00 per day, they should allow that. If, however, they think that is an overcharge, then you may deduct from that whatever you think should be deducted.

["Drawing and notifying jurors." That item in the account will also have to be modified, because it appears that in this county there is an act of assembly allowing the sheriff 50 cents for the summoning of each juror. The number of jurors, I think, is six hundred and something—six hundred and twenty-eight, which would amount to $314, I think, and that the sheriff should be allowed, which would increase this item of drawing and summoning jurors from $240.40 to $314. It is fair and right that he should have it. The law gives it to him, and there is no reason why he is not entitled to have it from the county.] [10]

"The cost of publishing election proclamations for February and November." That should be $2.00 instead of $22.00. The act gives them $1.00 in addition to expense of printing, but it appears that the county has paid the expense of publishing this proclamation, and the sheriff would only be entitled to $2.00 ; and that item must be reduced from $22.00 to $2.00.

"Amount of charges in commonwealth cases and bench warrants : " It appears from the testimony in this case that some of these bench warrants were issued and placed in the hands of the sheriff, but he did not succeed in apprehending the defendants. For that service he is only entitled to the sum of 25 cents. The fee bill gives him but 25 cents for the return of non est inventus, which is where the defendant is not found, so that

that item will have to be altered so as to reduce the item of these bench warrants in accordance with the act of 1868, which would be 25 cents each. There is also a charge for a number of cases of certioraris. There were a number of certioraris taken out in which parties were brought in by warrant for violating the Sunday law. The sheriff would not be entitled to charge the county with the cost of these cases. They would have to be recovered from the parties who instituted those proceedings. It appears that they were brought into court on a certiorari and Judge METZGER reversed the cases, and the costs will have to be collected from the parties who instituted these proceedings, because they would be reversed at the cost of the informant. These costs can be collected in the regular way by the sheriff, but of course he cannot charge them against the county.

There are also some charges made here in desertion cases. These are proper charges. The sheriff is entitled to same charges in desertion cases as in surety of the peace cases, and they must be allowed the sheriff.

I believe I have now called the attention of the jury to all the items. In the item of drawing and notifying jurors, the $24.00 must be deducted, because under the fee bill the sheriff is not entitled to $4.00 for summoning the jurors, as the 50 cents is intended to cover all the expenses, including the summoning and return of the venire; but as I have already said to you, this item is made out by counsel for the sheriff to amount to $314, and in making up your statement you should credit the sheriff with $314, and also with $40.00 for the report made under the board of charities act.

[I believe I have called your attention to all the items that are excepted to in this account, and it will be for you to determine under the evidence what the sheriff is fairly and honestly entitled to. He is entitled to be fairly compensated for the services which he has rendered, but if in any of these items the sheriff has made an overcharge and which he is not legally entitled to, of course it must be deducted from his account; but if the jury from an investigation of this case are fully satisfied that the sheriff is fairly entitled to these items, except those items which we have stricken from his account, then they should be allowed, and they would be right.] [11]

Verdict and judgment for defendant for $1,344.34. Plaintiffs appealed.

*Errors assigned* among others were (1–11) above instructions, quoting them.

*T. M. B. Hicks, W. H. Spencer* with him, for appellants.— County auditors act ministerially, and the finality of their action rests on positive enactment, and is not inherent like judicial action : Burns v. Clarion County, 62 Pa. 422.

If the legislature intended to accept any other counties in the act of 1868, P. L. 14, they would have said so. But having enumerated the counties that should not be subjected to the act of 1868, none other, by implication, can be excepted. The maxim, " Expressio unius est exclusio alterius," applies as a sound rule of interpretation : Brocket v. R. R., 14 Pa. 243; Miller v. Kirkpatrick, 29 Pa. 229; Olive Cemetery Co. v. Phila., 93 Pa. 131; Erie v. Church, 105 Pa. 281.

The sheriff is entitled to recover only the actual cost of transportation, food and lodging of prisoners : Irwin v. Commissioners, 1 S. & R. 505; Commissioners v. Patterson, 2 Rawle, 106.

*H. C. Parsons, J. F. Strieby* with him, for appellee.—A general statute without negative words does not repeal a prior statute which is particular, even though the provisions of the one be different from the other : Morrison v. Fayette Co., 127 Pa. 110; Malloy v. Com., 115 Pa. 25; Bell v. Allegheny Co., 149 Pa. 381.

OPINION BY MR. JUSTICE FELL, May 11, 1896 :

The appellants were plaintiffs in an issue framed by the court of common pleas under the provisions of the act of June 12, 1878, to determine the right of the appellee, the sheriff of Lycoming county, to certain fees and expenses which were allowed upon the audit of his account by the county auditors. It was shown by the investigation at the trial that the sheriff, who appears to have acted in entire good faith, had in some cases charged too much and in others less than he was entitled to. In a total of $8,048.75 the excess in charges was found to be $130.33. The charges excepted to were arranged under nine different heads, but this appeal relates to those only for board of prisoners, the dispute being as to the number of days

for which board was furnished; for washing done for prisoners under a contract with the county commissioners; for the expense of removing prisoners to the penitentiary, asylum, house of refuge and reformatory, and for the fees for the summoning of jurors. Except as to the last mentioned charge the issue raised was one of fact only, and we see no error in the manner in which it was submitted to the jury. The charge for the removal of prisoners seems to have been liberal, but it does not affirmatively appear from the testimony that it includes any material item which would not come under the head of necessary and proper expenses incurred by the sheriff in the discharge of his duties. He should be strictly confined to expenses reasonably necessary, and upon this point the instruction might have been more distinct and specific, but the whole question was fairly, clearly and fully presented to the jury.

For the summoning of jurors the sheriff had charged 30 cents each. It was suggested at the trial that the act of April 2, 1868, P. L. 14, limiting the charge to 30 cents, did not apply to Lycoming county, and that the sheriff was entitled to 50 cents each for this service under the local act of March 12, 1866, P. L. 187, and the jury was so instructed. The purpose of the act of 1868 was to establish a fee system applicable to the whole state. The first section provides : " That the fees of the several officers throughout this commonwealth shall be the same as are hereinafter ascertained and appointed." To six counties named the act does not apply, and as to two other counties its application is to a part only of the county officers. It is however a general act from the operation of which certain counties are excepted and the exceptions indicate an intention that all other counties should be subject to its provisions. It is true that repeals by implication are not favored, and that a subsequent general statute does not repeal a local statute inconsistent with it unless words of repeal are used or the intention to repeal is apparent; but the purpose of the act to establish a uniform system, the general language of the first section making it applicable " throughout this commonwealth," and the particular exceptions named in the last section, indicate an intention to repeal inconsistent acts, and we are of the opinion that the local act of 1866 is repealed by the general act of 1868.

The claim of the sheriff for summoning jurors should therefore be reduced from $314, to $240.40, and the judgment reduced to $1,270.74, which is accordingly done. The judgment as so modified is affirmed.